ST. PAUL, J.
 

 This is a suit on a promissory note. The defendant has set up three several defenses, as follows:
 

 (1) In the original answer: That said note was given as consideration for an option to purchase certain lands; that the title to said lands, or a large part thereof, is not merchantable; that there hás therefore been a
 
 failure of considei-ation
 
 for said note.
 

 (2) In an amended answer: That the allegation of the original petition (that said note was given as consideration for an
 
 option)
 
 was made in error on the part of defendant’s counsel; that said note was
 
 not
 
 given as consideration for an option, but was given
 
 without consideration whatsoever j
 
 that the Orange Land Company owned 109,000 acres of land, which it agreed to sell to one W. H. Timberlake, and the said Timberlake agreed to, buy the sa-me and pay the price; that neither said Timberlake nor said Rat-cliff have at any time assigned or attempted to assign said contract to defendant; that said note was given to one T. A. Dees to be issued by him in acquiring an option on the lands covered by the contract, between the Orange Land Company and said Timberlake, defendant having been informed by said Dees that said Ratcliff owned said contract, and was in a position to transfer same; that said note was issued for no other purpose, and was therefore
 
 without consideration,
 
 as said Ratcliff néver at any time owned or was entitled to -any option on said lands, and never at any time transferred to defendant any option to purchase said land.
 

 (3)In a supplemental answer: That said note was obtained from defendant through
 
 fraud and collusion
 
 between plaintiff and others, as disclosed by the testimony of plaintiff and his witnesses.
 

 That is to say, plaintiff pleads three defenses, which (in reverse order) are (1) fraud; (2) want of consideration; and (3) failure of consideration.
 

 I.
 

 The facts of the case are briefly these: The Orange Land Company held title to a body of land aggregating 109,000 acres. On May 1, 1922, the Land Company, in consideration of the sum of $5,000 paid it in cash by Timberlake, agreed that,
 
 if
 
 the said Timberlake “shall first make the payment and perform the covenants hereinafter mentioned,” then the Orange Land Company will convey to him (or his assigns) by a good and sufficient deed and clear of all incumbrances, the aforesaid lands. And “in consideration of the said conveyance,” said Timberlake agreed to pay for said land at the rate of $3.50 per acre, in cash or on certain agreed terms,
 
 acceptance
 
 and payment to be not later than January 1, 1923; it being “understood that the $5,000 paid * * * is in consideration of the present option.”.
 

 In point of fact the said Timberlake was only acting for plaintiff, and paid the $5,000 with plaintiff’s money.
 

 Thereafter plaintiff sold his contract to one T. A. Dees, for account of defendant, for the sum of $13,000, of which defendant paid cash $3,000, and gave his note for $10,000 (being the note herein sued upon),; out of which plaintiff- was to allow a commission of $2,000 to Dees and $1,000 to Timberlake, and receive for himself $10,000
 
 net
 
 for his contract.
 

 
 *711
 
 II.
 

 The charge of fraud falls completely; it was not even mentioned in either brief or argument. Dees and Timberlake appear to have been brokers, and they received their compensation from plaintiff; defendant paid them nothing, and made his own price.
 

 III.
 

 It is claimed that defendant meant to purchase only an
 
 option,
 
 not. a mutually binding promise of sale. The contract recited above is clearly nothing but an option. The Orange Land Company promised to
 
 convey
 
 the land
 
 if
 
 Timberlake (Ratcliff) paid the price and
 
 accepted
 
 the conveyance before January 1st, and Timberlake agreed to pay the price “in consideration of the said conveyance.” But Timberlake did not bind himself in any way to
 
 accept
 
 said conveyance or to pay the price at all events. The parties called the contract an “option,” and declared that the $5,000 paid was for the option itself, and not upon the price of the land. The contract was clearly only an
 
 option
 
 and nothing more. Defendant wanted to purchase an option,, and that is what he purchased.
 

 IY.
 

 It may be that the giving of an option by the holder of lands is a promise (even though conditional) to sell the land itself, and hence that he. warrants his right to sell it, which is equivalent to a warranty that his title thereto is good and sufficient. On this however, we need not pass. But the mere transfer of an option by the holder thereof is essentially
 
 not
 
 a promise to sell the land; on the contrary the holder of an option to buy lands does not pretend to have title to the lands, but only the right to call upon the holder of such lands to convey them to him. Hence, when he- transfers his option he does not promise to sell the lands, but merely transfers to his assignee the right which he himself has to call upon the holder of the lands to convey them to him-. The assignment of an option to buy is therefore nothing more than the sale of an incorporeal right; and hence, all that the seller warrants is the existence of that right,
 
 not
 
 the solvency of the obligor (i. e. the ability of the obligor to perform his contract). R. O. C. arts. 2046, 2647.
 

 Our conclusion is that the transferor of an option to buy lands does not warrant the title to the lands. This is also the rule in other jurisdictions.
 

 “The agreement between the assignor and assignee '(of a bond or contract for the conveyance of land) may expressly require that .the vendor shall convey a good or marketable title, or contain a warranty of the vendors title (as in Lawson v. Sprague, 51 Wash. 286, 98 Pac. 737). But by the weight of authority, if the purchaser assigns his contract or bond for title, and does not expressly warrant that
 
 the title is
 
 a good title, the assignee as between himself and the assignor assumes the risk of the validity of such title, and in the absence of fraud on the part of the assignor he must look to the original vendor in case the title proves defective.” 39 Cyc. 1672.
 

 It is therefore unnecessary to examine whether the title to part of the lands covered by the option was defective, since that would constitute no defense to the note herein sued upon.
 

 Decree.
 

 The judgment appealed from is therefore reversed; and it is now ordered that plaintiff, E. R. Ratcliff, have judgment against defendant, E. A. McIIhenny, for the full sum of $10,000, with 6 per cent, per annum interest thereon from August 15, 1922, and 10 per cent, attorneys’ fees on the whole; defendant to pay all costs of both courts.